# OCTOBER TERM, 1897.

WOLCOTT *v.* WOLCOTT.[1]

HUSBAND AND WIFE — EXTREME CRUELTY — SEPARATE MAINTE-
NANCE—STATUTES.

> A husband who makes to his wife indecent and criminal pro-
> posals, is filthy in his habits about the house, inconsiderate
> of her tastes and enjoyment, neglectful of her in sickness,
> vile in his insinuations as to her relatives and friends, of
> ungovernable temper, penurious, and unreasonable, and who
> finally, upon her leaving home for a temporary visit to her
> son, sends out printed notices that she has left his bed and
> board, and forbidding all persons to extend credit to her on his
> account, is guilty of extreme cruelty, entitling her to a decree
> for separate maintenance upon petition filed under Act No.
> 243, Pub. Acts 1889, which provides that such a decree shall
> not be made unless, on the hearing, such a state of facts shall
> appear as would entitle the wife to a decree of divorce upon
> the grounds specified in the petition.

Appeal from Jackson; Peck, J. Submitted February
10, 1897. Decided October 5, 1897.

Petition by H. Annette Wolcott against Henry Levant
Wolcott for separate maintenance. From a decree dis-
missing the petition, petitioner appeals. Reversed.

*Wilson & Cobb,* for petitioner.

*Charles E. Snow* ( *T. E. Barkworth,* of counsel), for
defendant.

LONG, C. J. This is a petition for separate mainte-
nance. It is brought under Act No. 243, Pub. Acts 1889,
which provides substantially that no decree shall be made
in favor of the petitioner unless, on the hearing, such a

---

[1] Rehearing denied November 23, 1897.

state of facts shall appear as would entitle her, from her husband's wrongful acts, to a decree of divorce upon the grounds specified in the petition, or unless such a state of facts set out in the petition shall be proved as shall make it appear that the respondent has deserted the petitioner, with intent to leave her without adequate means of support, without good and sufficient cause, etc. The ground upon which the petition is based is that the husband has been guilty of extreme cruelty towards the petitioner, etc. On the hearing, the court below denied the relief asked, and petitioner appeals.

The parties were married in the year 1861. There are two children, issue of this marriage, both boys, who have now reached man's estate. The acts of cruelty set out in the petition are substantially that, very soon after the marriage, the defendant proposed to petitioner that she assist him in bringing about criminal intimacy with a young girl of 14 years of age, and upon another occasion made the same proposition in reference to other girls; that he at other times made suggestions to the petitioner that she have criminal relations with an acquaintance of his, and, if she would, he could have such relations with the wife of this acquaintance; that later he made the same proposition in relation to the hired man, saying he could get the work done cheaper; that, upon her refusal to comply with his requests in this regard, he became angry and morose.

The bill further sets out that some 13 years ago petitioner was suffering from a uterine tumor; that an operation became necessary, and he sent her to stay with her mother while being so treated and cared for, though he knew the mother was old and feeble, and unfit to assume such care; that he was filthy in his habits about the house, and constantly annoyed her with such habits; that seven years ago she joined the church, when he became angry, and said the ministers were immoral, and that, when they called on the sisters, it was for immoral purposes; that he was angry with her for attending church, and, when she

returned on one occasion, she found he had scattered ashes over the carpets and furniture, to annoy and vex her; that, during all the years they had lived together, he had done but little towards buying her clothing, although abundantly able to do so; that he was a close and penurious man, and of ungovernable temper, and would not speak to her for many weeks at a time; that he was cross, ugly, morose, and violent when their children interfered in her behalf, at one time biting the finger of one of the boys for interfering in her behalf; that these acts of cruelty continued from year to year; that in 1890 she went with him to Colorado, to settle the younger son there or in New Mexico in business; that, in the spring following, he came home, leaving her there without money for two years, where she kept house for her son, who was in poor circumstances; that, when she did return, her son paid the expenses of the journey; that the defendant acted cold and distant towards her, as if she were not welcome, after her return; that it had been understood that both petitioner and defendant were to take back to New Mexico a grandchild that had been left in their care; that, when the time came to take the child back, he refused to go, but made no objection to petitioner's going until the day before starting, when he told her, if she went, she could not come back; that she told him she was coming back, when she started; that, the next day after her arrival in New Mexico, she found that printed notices signed by the defendant had been received by various parties there, saying:

"My wife, Annette H. Wolcott, having left my bed and board without just provocation, I forbid all persons trusting or harboring her on my account. I will pay no bills of her contracting."

The petition further sets up that, during all the time they had lived together, she had never become indebted on his account, except for one pair of shoes, for which he refused to pay, and has never paid; that he objected to her visiting her sister, saying she was a woman of bad

character, and, when she did visit her sister, he would say they had been off together for immoral purposes.

These are the general charges of cruel treatment. The petition avers that defendant is a man of considerable means, and worth, at least, $15,000. The defendant answered, and the answer contains a general denial of the matters set up in the petition. The proofs were taken in open court.

We have read the record with much care and some interest, as the charges contained in the petition, if substantiated, will entitle the petitioner to the relief asked. The fact that the testimony was taken in open court, where that court had the opportunity to see the witnesses, and judge of their fairness, has great weight in determining the rights of the parties. Yet, giving this fact all the weight that is usual in such cases, we are not able to agree with the learned circuit judge. While the petitioner is not supported by other witnesses in relation to the immoral propositions made to her by the defendant (some of which, by their very nature, could be known only to her), except by her sister's testimony in relation to one occasion when defendant made indecent proposals to her, yet the whole story is told in such a manner, bearing the evidences of veracity, that one is impressed with the truth of it. The defendant, when questioned on the trial in relation to these charges, contented himself with a simple denial, and in one instance shielded himself behind the statement, "I do not remember."

But, whatever may be said of these charges, the testimony of the petitioner is fully corroborated by the two sons and others, showing a long series of years of systematic cruelty by the husband, and long-suffering on the part of the wife, through his hard, selfish, and unbending will. Through all the years of their married life, of whatever the petitioner took pleasure in, it seemed the purpose of the defendant to deprive her. Her tastes and enjoyments were never considered. His judgment was to be paramount in all things, though they related to her

individually.  While he did not do personal violence to her, and gave her the actual necessities of life, yet it is about all that it can be said he refrained from in making her life miserable.  That she should have endured this treatment this length of time is but one of the many instances of the endurance of women of sensitive and refined temperament, who suffer marital wrongs in silence, rather than expose their trouble to a criticising public.  It was the proverbial "last straw"—the publishing of the notices, in which the defendant himself took the initial step—that convinced her of the uselessness of protecting him further, or of her own martyrdom.  He does not pretend but that she was a faithful wife to him, a good housekeeper, and careful in her expenditures; and, from the sons' fidelity to her, she must have been a good mother.  Nothing, apparently, was needed on her part to meet his requirements, except to make her individuality a nullity.  That she could not absolutely do, and hence his displeasure.  We are satisfied that the petitioner should not be compelled to live in the same house with defendant, and is entitled to her separate maintenance.

The defendant is shown to be possessed of a farm of 170 acres, worth, according to his own estimation, $35 per acre; a house and two lots in Hanover; and personal property, moneys, and security amounting to several thousand dollars.  In view of this, we think defendant should pay petitioner, for her support and maintenance separate and apart from him, the sum of $200 within 60 days from this date, and the sum of $200 per annum from that time, payable quarter-yearly, during her lifetime, or until the further order of the court, the same to be made a lien upon the farm and the home at Hanover.

A decree will be entered in accordance with these views. Petitioner will recover her costs of both courts.

The other Justices concurred.